**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CONMED CORPORATION,**

                                                    **Plaintiff,**

         **vs.**                                                        **6:23-CV-766**
                                                                        **(MAD/ML)**

**FEDERAL INSURANCE COMPANY,**

                                                    **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**DLA PIPER LLC**                              **DANIEL S. JONAS, ESQ.**
1650 Market Street – Suite 5000
Philadelphia, Pennsylvania 19103
Attorney for Plaintiff

1616 Long Ridge Road                           **ERICA LYNN VISOKEY, ESQ.**
Stamford, Connecticut 06903
Attorney for Plaintiff

**HANCOCK ESTABROOK, LLP**                     **JOHN G. POWERS, ESQ.**
1800 AXA Tower I                               **MARY L. D'AGOSTINO, ESQ.**
100 Madison Street
Syracuse, New York 13202
Attorneys for Plaintiff

**COHEN ZIFFER FRENCHMAN**                     **DAVID J. MATULEWICZ, ESQ.**
**& MCKENNA LLP**                              **MEREDITH ELKINS, ESQ.**
1325 Avenue of the Americas - 31st Floor       **ROBIN L. COHEN, ESQ.**
New York, New York 10019
Attorneys for Plaintiff

**HANGLEY ARONCHICK SEGAL**                    **RONALD P. SCHILLER, ESQ.**
**PUDLIN & SCHILLER**                          **BONNIE M. HOFFMAN, ESQ.**
One Logan Square - 27th Floor                  **ELIZABETH C. DOLCE, ESQ.**
Philadelphia, Pennsylvania 19103
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff, CONMED Corporation, initiated this lawsuit against Defendant, Federal Insurance Company, on June 23, 2023.  *See* Dkt. No. 1.  Plaintiff is a global medical technology company that operates a distribution warehouse which distributes sterilized medical requirement. *See id.* at ¶¶ 5-6.  "For over a decade, [Plaintiff] has purchased insurance policies from [Defendant Federal Insurance Company] that provide[s] coverage for defense costs, indemnification obligations, and other losses resulting from bodily injury."  *Id.* at ¶ 12.  Plaintiff filed a prior lawsuit against Defendant in this Court on July 26, 2021, alleging that Defendant breached the terms of their insurance contract by failing to defend Plaintiff's distribution warehouse landlord in a state court action.  *See CONMED Corp. v. Fed. Ins. Co.*, 621 F. Supp. 3d 278, 280 (N.D.N.Y. 2022).  In that lawsuit, the parties cross moved for judgment on the pleadings.  *See id.*  The Court granted Plaintiff's motion for judgment on the pleadings and denied Defendant's motion for judgment on the pleadings, concluding that Defendant had a duty to defend Plaintiff's landlord in the state court action.  *See id.* at 284-87.  Defendant appealed the decision, but later dismissed it pursuant to a settlement agreement.  *See* Dkt. No. 37.  The parties now dispute the contents of that settlement agreement.  Presently before the Court is Defendant's motion to dismiss, *see* Dkt. No. 33, Plaintiff's motion for partial[1] summary judgment, *see* Dkt. No. 38, and the parties' responses and replies.  *See* Dkt. Nos. 45, 50.

---

[1] Plaintiff moves for summary judgment only as to its breach of contract claim and not its breach of the implied covenant of good faith and fair dealing claim.  *See* Dkt. No. 38-11 at 22 n.12.

## II. BACKGROUND

Defendant moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); therefore, its statement of facts accompanying the motion relies on the allegations in Plaintiff's complaint. *See* Dkt. No. 33-1 at 2-5;[2] *see also Morris v. Haas*, No. 1:17-CV-00371, 2018 WL 5017742, *2 (N.D.N.Y. Oct. 16, 2018) (quotation omitted) ("When deciding a motion to dismiss, a court's review is ordinarily limited to 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference'"). Plaintiff moved for partial summary judgment and submitted a statement of material facts as required by Local Rule 56.1, as well as additional documentary evidence. *See* Dkt. Nos. 38-3–38-10; *see also* N.D.N.Y. L.R. 56.1(a). Defendant submitted a Response to Plaintiff's Statement of Material Facts as required by the Local Rules. *See* Dkt. No. 45-2; *see also* N.D.N.Y. L.R. 56.1(b).

The factual background in this case is largely undisputed. There is essentially only one dispute: the interpretation of a clause related to attorneys' fees in the parties' settlement agreement. Although Defendant filed a motion to dismiss, it had the opportunity to respond to Plaintiff's motion for partial summary judgment, and the Court will derive the relevant factual background from the parties' statement of material facts and response thereto.

The equipment that Plaintiff distributes is sterilized with Ethylene Oxide. *See* Dkt. No. 45-2 at ¶ 2. One of Plaintiff's facilities is in Lithia Springs, Georgia where Plaintiff leases the facility to a landlord entity that in turn retained companies to perform management activities (the "landlords"). *See id.* at ¶¶ 2-4. In April 2021, current and former employees of Plaintiff sued the landlords for allegedly being exposed to unsafe levels of Ethylene Oxide. *See id.* at ¶¶ 5-6. The

---

[2] Citations are to the pagination provided in the footer of the parties' filings.

landlords sought indemnification from Plaintiff and Plaintiff notified its own insurer: Defendant. *See id.* at ¶¶ 7-8.  Plaintiff hired DLA Piper, LLP to defend the landlords.  *See id.* at ¶ 20. Plaintiff agreed to pay DLA Piper's attorneys rates ranging from $459 to $1,066 per hour.  *See id.* Defendant initially refused to indemnify Plaintiff and Plaintiff brought the first case in this Court. *See id.* at ¶ 22.  The Court awarded judgment in Plaintiff's favor.  *See CONMED Corp.*, 621 F. Supp. 3d at 287.  Defendant appealed the Court's decision.  *See* Dkt. No. 45-2 at ¶ 26.

On January 3, 2023, Plaintiff and Defendant executed an agreement titled the "Going Forward Defense Agreement" which contemplated dismissal of Defendant's appeal and resolved outstanding disputes over the defense and indemnification of the state court landlord action.  Dkt. No. 37.  The Agreement states, in relevant part, as follows:

> **WHEREAS**, the Parties desire to compromise and settle their differences regarding the Sterigenics Coverage Action and appeal and Landlord Coverage Action and appeal;

> **WHEREFORE**, in reliance on the foregoing recitals which are incorporated herein, and in consideration of the promises, covenants, and obligations contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows: . . .

> 3. **Defense of Landlord and Related Entities in the Alexander/Landlord Action.**

> a) Federal does not agree to pay the rates that ConMed agreed to pay DLA Piper in the Alexander/Landlord Action. Federal has the right and will propose what it considers reasonable rates to DLA Piper as of January 1, 2023.

> b) In the event that DLA Piper will not agree to Federal's proposed reasonable rates, (i) ConMed can pay the difference between the reasonable rates offered by Federal and what DLA Piper demands or (ii) Federal will replace DLA Piper with alternative counsel so long as Federal's selection of such counsel is reasonable.

4

> c) In the event Federal replaces DLA Piper, Federal will
> work with DLA Piper on a reasonable transition period to new
> counsel.

Dkt. No. 37 at 3-5.  The Agreement was signed by both parties.  *See id.* at 9.  Defendant proposed

a rate of $300 per hour for DLA Piper's partners.  *See* Dkt. No. 45-2 at ¶ 34.  Plaintiff did not

accept the proposed rate.  *See id.* at ¶¶ 35-49.[3]

In Plaintiff's motion for partial summary judgment, Plaintiff contends that "[t]he Going

Forward Defense Agreement plainly obligates [Defendant] to pay 'reasonable rates' for the

ongoing defense of the Landlord Action."  Dkt. No. 38-11 at 11.  Plaintiff argues that $300 per

hour is unreasonable given "[w]hile the Going Forward Defense Agreement contemplates some

discount on DLA's rates, it nonetheless requires [Defendant] to propose 'reasonable' rates that

account for the complexity of the action, the skill and experience of DLA's attorneys, and the

market for prevailing legal fees in Georgia, where the Landlord Action is pending."  *Id.* at 17.

Defendant argues that "the language of Section 3(a) of the Agreement as written is clear

and unambiguous[] with respect to [its] obligation: [Defendant] will propose rates to DLA Piper

that it—[Defendant]—considers reasonable."  Dkt. No. 33-1 at 8 (footnote omitted).  It also avers

that "the Agreement explicitly dictates what happens if DLA Piper does not agree to [Defendant's]

proposed reasonable rates."  *Id.* at 9 (emphasis omitted).  Defendant therefore argues that it

fulfilled its obligations as set forth in the Agreement because it proposed the $300 rate which it

believed to be reasonable.  *See* Dkt. No. 45 at 9-10.

### III. DISCUSSION

---

[3] For a more detailed recitation of the facts related to the underlying state court action as well as
the first lawsuit brought in this Court, the parties are referred to the Court's August 9, 2022,
Memorandum-Decision and Order in the first lawsuit.  *See CONMED Corp.*, 621 F. Supp. 3d at
280-83.

**A.      Legal Standards**

*1. Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v.*

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal

sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all

reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend

to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w]' that the pleader is

entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

above the speculative level," *see id.* at 555 (citation omitted), and present claims that are

"plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement of relief."'"  *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately,

"when the allegations in a complaint, however true, could not raise a claim of entitlement to

relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line

from conceivable to plausible, the[ ] complaint must be dismissed."  *Id.* at 570.

### *2. Motion for Summary Judgment*

"The entry of summary judgment is warranted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Doane v. United States*, 369 F. Supp. 3d 422, 438 (N.D.N.Y. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also* FED. R. CIV. P. 56(a).  "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jennings v. Decker*, 359 F. Supp. 3d 196, 204 (N.D.N.Y. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Doane*, 369 F. Supp. 3d at 438; *Kenney v. Clay*, 172 F. Supp. 3d 628, 635 (N.D.N.Y. 2016).

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)). However, irrelevant or unnecessary factual disputes do not preclude summary judgment.  *See Anderson*, 477 U.S. at 248.  Only genuine disputes about a material fact, such that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" will preclude summary judgment.  *Id.*

The party moving for summary judgment "bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim." *Doane*, 369 F. Supp. 3d at 438.  If the moving party establishes a prima facie basis for summary judgment and satisfies their burden, the burden then shifts to the nonmoving party, who must then "show, through affidavits or otherwise, that there is a material issue of fact for trial"

that a reasonable jury could resolve in its favor.  *Id.*; *see also Kenny*, 172 F. Supp. 3d at 635.

Evidence that is not significantly probative, or "the mere existence of some alleged factual dispute

between the parties[,] will not defeat an otherwise properly supported motion for summary

judgment." *Kenny*, 172 F. Supp. 3d at 635-36 (quoting *Anderson*, 477 U.S. at 247-48); *see also*

*Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) ("Genuine issues of fact are

not created by conclusory allegations").  The nonmoving party must show by more than a

"scintilla of evidence" that "a fact-finder could reasonably find for the non-movant."  *Heublein*,

996 F.2d at 1461.  In determining the existence of any genuine disputes of material fact, "a court

must resolve any ambiguities and draw all inferences from the facts in a light most favorable to

the nonmoving party."  *Smith v. N.Y.S. Off. of Temp. & Disability Assistance*, 535 F. Supp. 3d 90,

94 (N.D.N.Y. 2021) (quoting *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017)); *see*

*also Jeffreys*, 426 F.3d at 553.

**B.     Breach of Contract Claim**

     "To prevail on a breach-of-contract claim in New York, a plaintiff must prove: '(1) the

existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the

other party, and (4) damages attributable to the breach.'"  *Moreno-Godoy v. Kartagener*, 7 F.4th

78, 85 (2d Cir. 2021) (quoting *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 Fed.

Appx. 349, 350-51 (2d Cir. 2005)) (additional citation omitted).[4]  "'New York law follows the

common law rule that in interpreting a contract, the intent of the parties governs, and therefore, a

contract should be construed so as to give full meaning and effect to all of its provisions.'"

*Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 27 (N.D.N.Y. 2022) (quoting *PaineWebber Inc.*

---

[4] The parties agree that New York Law governs the interpretation of the Going Forward
Agreement.  *See* Dkt. No. 45-2 at ¶ 32.

*v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996)).  "'Under New York law[,] the initial interpretation of a contract is a matter of law for the court to decide' and '[i]ncluded in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous.'"  *Id.* (quoting *Alexander & Alexander Servs., Inc. v. These certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998)).

"'Ambiguity does not exist when contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself and concerning which there is no reasonable basis for a difference of opinion.'"  *Id.* (quoting *Richard v. Glens Falls Nat'l Bank*, No. 20-CV-0734, 2021 WL 810218, *7 (N.D.N.Y. Mar. 3, 2021)) (additional quotation and quotation marks omitted).  "'Conversely, [a] contract is ambiguous when it is reasonably susceptible of more than one interpretation.'"  *Id.* (quotation omitted).  "Courts may dismiss breach-of-contract claims on a Rule 12(b)(6) motion to dismiss where the language is 'clear and unambiguous'; however, 'a plaintiff's claim should not be dismissed if she has an arguable claim under the contract.'"  *Id.* (quotation and quotation marks omitted); *see also Hermant Patel M.D., P.C. v. Bandikatla*, No. 18-CV-10227, 2019 WL 6619344, *2 (S.D.N.Y. Dec. 5, 2019).

Plaintiff does not allege that the Agreement's language is ambiguous or unclear.  *See generally* Dkt. No. 1; *see also* Dkt. No. 33-1 at 8-10.  However, Plaintiff alleges and argues that Defendant has breached their contract by refusing to pay "reasonable" attorneys' fees, which is mandated by the clear language of the Agreement.  Dkt. No. 1 at ¶¶ 60, 64, 68; *see also* Dkt. No. 38-11.  Defendant argues that the clear and unambiguous language of the Agreement obligates it only to "propose what it" believes is a reasonable rate, irrespective of objective or third-party opinions on reasonableness.  Dkt. No. 45 at 3-6, 9-10.  Although neither party explicitly argues

that the contract language is ambiguous, the relevant portions of the Going Forward Agreement are reasonably susceptible to more than one interpretation such that the Court concludes there is an ambiguity.

The Agreement states that Defendant "does not agree to pay the rates that [Plaintiff] agreed to pay DLA Piper in the Alexander/Landlord Action." Dkt. No. 37 at 5. The parties do not dispute this sentence as it clearly states that Defendant will not pay DLA Piper at the rate that Plaintiff originally agreed—$459 to $1,066 per hour. *See* Dkt. Nos. 33-1, 38-11. The next two sentences, however, create the entire dispute. The Agreement states as follows:

> Federal has the right and will propose what it considers reasonable rates to DLA Piper as of January 1, 2023.
>
> b) In the event that DLA Piper will not agree to Federal's proposed reasonable rates, (i) ConMed can pay the difference between the reasonable rates offered by Federal and what DLA Piper demands or (ii) Federal will replace DLA Piper with alternative counsel so long as Federal's selection of such counsel is reasonable.

Dkt. No. 37 at 5. The parties focus on different words within these sentences: Plaintiff focuses on the word "reasonable," whereas Defendant relies on the phrases, "propose what it considers," "Federal's proposed," and "offered by Federal." Dkt. No. 38-11 at 11-15; Dkt. No. 45 at 3-6.

The Court finds that the language is reasonably susceptible to both interpretations. It is evident that Defendant has the right to propose rates for attorneys' fees and should Plaintiff disagree with those rates, Plaintiff must either pay the difference or allow Defendant to replace counsel. *See* Dkt. No. 37 at 5. However, the first sentence states "what [Defendant] considered reasonable rates," and the following sentence notes, "proposed reasonable rates" and "the reasonable rates offered by Federal." Dkt. No. 37 at 5. The first sentence implicates that Plaintiff is stuck with whatever rate Defendant proposes and subjectively thinks is reasonable. The second

sentence reads as though the rates proposed by Defendant must be objectively reasonable.  This ambiguity negates the Court's ability to grant Defendant's motion to dismiss.

In addressing this issue, Defendant distinguishes a case that Plaintiff relies on: *Richardson v. New York State Off. of Mental Health*, No. 6:11-CV-1007, 2018 WL 2021536, *1 (N.D.N.Y. Apr. 30, 2018).  *See* Dkt. No. 38-11 at 15-16; *see also* Dkt. No. 45 at 13.  As Defendant states, the language in the settlement agreement in *Richardson* is not identical to the language in the parties' Going Forward Defense Agreement.  *See* Dkt. No. 45 at 13.  In *Richardson*, the parties agreed to "reasonable attorneys['] fees."  *Richardson*, 2018 WL 2021536, at *1.  That phrase does not appear in the parties' Going Forward Defense Agreement.  *See* Dkt. No. 37.  However, the Agreement does say "proposed reasonable rates" and "the reasonable rates offered by [Defendant]."  *Id.*  These phrases can be read as requiring the rates proposed by Defendant to be reasonable.

There is an additional phrase addressing reasonableness that the parties do not discuss— the final line in the disputed section which states that if DLA Piper does not agree to Defendant's rates, one option that Plaintiff may accept is for Defendant to "replace DLA Piper with alternative counsel *so long as* [Defendant's] selection of such counsel *is reasonable*."  *Id.* (emphasis added). This same language was not used in the clauses that the parties dispute, *i.e.*, the clauses do not state that Defendant must propose a rate that "is reasonable."

Both parties are corporate entities and neither suggests that they lack the intelligence or sophistication to fairly negotiate the Agreement.  As Defendant states, Plaintiff could have negotiated for different terms in the Agreement.  *See* Dkt. No. 45 at 2.  However, Plaintiff's interpretation of the clauses is not implausible; Plaintiff may have thought it did not need to negotiate different terms because it believed the terms already required objective reasonableness.

11

The Court cannot determine either parties' intent or understanding of the terms at the time of contracting as the parties present no such evidence. *See Evolution Markets, Inc. v. Alpental Energy Partners, LLC*, 221 F. Supp. 3d 361, 369 (S.D.N.Y. 2016) (citation and quotation omitted) ("A court's primary objective in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement. . . . While interpretation of ambiguous contract language generally is a question of fact to be resolved by the factfinder, 'the court may resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning [is] so one-sided that no reasonable person could decide to the contrary'"); *see also Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002).

Therefore, the Court must deny Defendant's motion to dismiss because (1) Plaintiff alleges that Defendant was obligated to pay reasonable fees based on the language of the Agreement and that Defendant's proposal is unreasonable; (2) Defendant argues that it only had to propose whatever rate it believed was reasonable so it fulfilled its obligations; and (3) the Court concludes that the relevant Agreement language is ambiguous. *See Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 237 (N.D.N.Y. 2021) (quotations and additional quotation marks omitted) ("'In reviewing a motion to dismiss for a breach of contract claim pursuant to Rule 12(b)(6) [of the Federal Rules of Civil Procedure] . . . the court is not constrained to accept the allegations of the pleading in respect to the construction of the contract'"); *Tucker v. Chase Bank USA, N.A.*, 399 F. Supp. 3d 105, 114 (S.D.N.Y. 2019) (quotations and quotation marks omitted) ("[C]ourts must not choose between reasonable interpretations of ambiguous contract provisions").

For similar reasons, the Court cannot grant Plaintiff's motion for partial summary judgment. Plaintiff moves for partial summary judgment, asserting that "[t]he undisputed facts reveal that [Defendant] has breached its contract with [Plaintiff] and that [Plaintiff] is entitled to

summary judgment as a matter of law." Dkt. No. 38-11 at 11.  Yet Plaintiff also acknowledges

that Defendant "disputes the interpretation of the plain language of the agreement . . . ." *Id.*  As

the interpretation of the Agreement language is disputed and is subject to two reasonable

interpretations, there is a dispute of fact.

 "Summary judgment normally is inappropriate when a contractual term is ambiguous

because 'a triable issue of fact exists as to its interpretation.'" *Burger King Corp. v. Horn &*

*Hardart Co.*, 893 F.2d 525, 528 (2d Cir. 1990) (quoting *Leberman v. John Blair & Co.*, 880 F.2d

1555, 1559 (2d Cir. 1989)) (additional citations omitted).  "However, where the contract language

creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered." *JA*

*Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (citations omitted).  "Where there is

such extrinsic evidence, the meaning of the ambiguous contract is a question of fact for the

factfinder." *Id.* (citations omitted); *see also Burger King Corp.*, 893 F.2d at 528 (citing *Schering*

*Corp. v. Home Ins. Co.*, 712 F.2d 4, 9-10 (2d Cir. 1983)) ("If there is conflicting extrinsic

evidence regarding the parties' intent, the district court may only identify the issues at the

summary judgment stage, not resolve them").

 Plaintiff asserts that the Court may determine what is "reasonable" as a matter of law, and

that "reasonable" rates are far higher than $300 an hour based on DLA Piper's attorneys' expertise,

Georgia case law, industry surveys, and amounts Defendant has paid DLA Piper in other

litigation matters.  Dkt. No. 38-11 at 15-22.  Defendant states that summary judgment should be

denied as premature because "discovery on 'reasonable rates' is required."  Dkt. No. 45 at 18.

Plaintiff argues that "[t]he Court should reject [Defendant's] efforts to forestall Summary

Judgment on Rule 56(d) grounds because all discovery purportedly necessary for the

determination of reasonable fees is either part of the available record in the Landlord Action[] or

consists of information already in [Defendant's] possession that it should have collected and

presented in opposing [Plaintiff's] cross-motion." Dkt. No. 50 at 1.

Federal Rule of Civil Procedure 56 provides as follows:

> (d) When Facts Are Unavailable to the Nonmovant.  If a nonmovant
> shows by affidavit or declaration that, for specified reasons, it
> cannot present facts essential to justify its opposition, the court
> may:
>
>> (1) defer considering the motion or deny it;
>>
>> (2) allow time to obtain affidavits or declarations or to take
>> discovery; or
>>
>> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d).  "The affidavit or declaration 'must describe: (1) what facts are sought and

how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue

of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's

efforts were unsuccessful.'"  *Rosati v. Mayorkas*, No. 6:22-CV-999, 2023 WL 5763374, *4

(N.D.N.Y. Sept. 7, 2023) (quoting *Saleh v. Blinken*, 596 F. Supp. 3d 405, 413 (E.D.N.Y. 2022)).

Defendant has submitted the declaration of Attorney Ronald P. Schiller who attests that

Defendant will need to engage in discovery to respond to Plaintiff's motion more fully.  *See* Dkt.

No. 45-1.  Mr. Schiller notes that the affidavit of DLA Piper partner Melissa A. Reinckens,

submitted with Plaintiff's motion, refers to attorneys' fees rates between Defendant and other

policyholders.  *See id.* at ¶ 12.  Mr. Schiller contends that Defendant "has no or insufficient

knowledge of these other 'litigation Matters' at this time."  *Id.*  He also points to Plaintiff's reliance

on an "ELM 2022 Real Rate Report" and avers that Defendant needs time to conduct discovery

related to the Report.  *Id.* at ¶¶ 13-17.  As Mr. Schiller explains, Plaintiff relies on the Report to

note that litigation attorneys in Georgia receive an average of $568 per hour for partners;

however, the report includes separate categories for various types of insurance defense, some which note lower rates.  *See* Dkt. No. 38-11 at 8; *see also* Dkt. No. 45-1 at ¶ 17.  Mr. Schiller ignores that Plaintiff also relies on the Report's reference to Toxic Tort liability, which maintains a rate of $439 per hour for partners—a rate higher than the $300 an hour offered by Defendant. *See* Dkt. No. 38-11 at 8; *see also* Dkt. No. 38-3 at 54.

Additionally, Mr. Schiller does not explain what efforts were taken to conduct discovery. *See generally* Dkt. No. 45-1.  Plaintiff states that Defendant "has taken no steps in the five months since [Plaintiff's] initial request for summary judgment."  Dkt. No. 50 at 2.  To support this contention, Plaintiff does not cite a motion for summary judgment, but a pre-motion letter.  *See id.*  By its Individual Rules, this Court requires parties to file a pre-motion letter prior to filing a dispositive motion—which is precisely what Defendant and Plaintiff did.  *See* Dkt. Nos. 17, 23. Defendant could not have predicted whether the Court would ultimately grant Plaintiff's request to file a motion for partial summary judgment.  The Court did grant the request on September 13, 2023.  *See* Text Minute Entry 09/13/2023.  Plaintiff filed its motion on October 27, 2023, and Defendant's response was due on November 17, 2023.  *See* Dkt. No. 38.  Therefore, it appears that Defendant was aware of Plaintiff's arguments, contentions, and evidence for only three weeks prior to its own deadline for filing a response.

To argue that Defendant's request for discovery should be denied, Plaintiff relies on *Hoffmann v. Airquip Heating & Air Conditioning*, 480 Fed. Appx. 110 (2d Cir. 2012).  *See* Dkt. No. 50 at 2.  In *Hoffman*, the Second Circuit affirmed the district court's denial of the plaintiff's motion for further discovery because the Rule 56(d) affidavit "lacked any particularity as to how the facts sought would create an issue of material fact and made no attempt to explain the efforts [the plaintiff] made to obtain those facts during the time provided for discovery."  *Hoffman*, 480

Fed. Appx. at 112.  Here, the record does not reflect that there was any "time provided for discovery."  *Id.*  Rather, Defendant filed a motion to dismiss in lieu of filing an answer. Therefore, *Hoffman* is distinguishable.  *See Hoffmann v. Airquip Heating & Air Conditioning*, 761 F. Supp. 2d 84, 88 (W.D.N.Y. 2011) (discussing the "reasonable discovery deadlines" set by the magistrate judge); *see also Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) (citations omitted) ("Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery").

Based on the foregoing the Court will permit the parties to conduct limited discovery into (1) the parties' understanding of the meaning of the language in the Going Forward Agreement; and (2) the reasonableness of the rate offered by Defendant.  *See Wood v. F.B.I.*, 432 F.3d 78, 84 (2d Cir. 2005) ("A district court has broad discretion to manage pre-trial discovery").

In sum, Defendant's motion to dismiss Plaintiff's breach of contract claim is denied and Plaintiff's motion for partial summary judgment is denied without prejudice and with leave to renew subject to the completion of discovery.

## C.     Bad Faith Claim

Plaintiff also brings a claim for breach of the implied covenant of good faith and fair dealing in violation of New York Insurance Law § 2601(a).  *See* Dkt. No. 1 at ¶¶ 94-101. Defendant argues that the claim must be dismissed because (1) "there is no claim for insurance bad faith when an insurance policy is not at issue"; (2) there is no "separate cause of action for breach of the implied covenant of good faith and fair dealing when it is based upon the same facts supporting a pled breach of contract claim"; (3) "there is no bad faith because [Defendant] has not breached the Agreement"; and (4) Plaintiff has not alleged conduct that amounts to bad faith.

Dkt. No. 33-1 at 11-13.  Defendant also states in a footnote that "Sec. 2601 does not provide for or permit a private right of action."  *Id.* at 11 n.8.

"Section 2601 makes it unlawful for an insurer doing business in New York from engaging in 'unfair claim settlement practices.'"  *Violet Realty, Inc. v. Affiliated FM Ins. Co.*, 267 F. Supp. 3d 384, 390 (W.D.N.Y. 2017) (quoting N.Y. Ins. Law § 2601).  "It is well settled that there is no private right of action under § 2601."  *Id.* (citing *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 317-18 (1995) ("Insurance Law § 2601 does not give rise to a private cause of action"); *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 614 (1994) ("[T]he law of this State does not currently recognize a private cause of action under Insurance Law § 2601")); *see also Maimonides Med. Ctr. v. First United Am. Life Ins. Co.*, 116 A.D.3d 207, 218 (2d Dep't 2014) (citation omitted) ("Insurance Law § 2601 concerns general business practices, and is enforceable only by the [New York State] Superintendent [of Insurance]"); *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 219 (E.D.N.Y. 2010) (collecting cases) ("Courts have held that a private right of action is not available").  Thus, Plaintiff's bad faith claim, insofar as it relies on section 2601, must be dismissed.

Plaintiff argues that '[t]he implied covenant of good faith and fair dealing exists in all contracts" regardless of section 2601's applicability.  Dkt. No. 38-11 at 22.  "It is well settled that all contracts imply a covenant of good faith and fair dealing in the course of performance, and 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'"  *Sec. Pac. Nat. Bank v. Evans*, 62 A.D.3d 512, 514 (1st Dep't 2009) (quoting *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389 (1995)) (additional quotation omitted); *see also Russo v. United Recovery Sys., LP*, No. 14-CV-851, 2014 WL 7140498, *3 (E.D.N.Y. Dec. 12, 2014) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460

F.3d 400, 407 (2d Cir. 2006)) ("New York law implies a covenant of good faith and fair dealing in every contract 'pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract'").

Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by "refusing to pay any invoiced defense costs," "imposing an arbitrary and unreasonable cap of $300 per hour," "refusing to negotiate with [Plaintiff] in good faith to resolve this dispute," "forcing its insured, [Plaintiff], to incur additional costs of pursuing this action" and "refusing to fund an adequate legal defense."  Dkt. No. 1 at ¶ 97.  Defendant argues that this claim must be dismissed because "[t]his is the same conduct that [Plaintiff] alleges constitutes a breach of the terms of the Agreement," Dkt. No. 45 at 14, and "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when it is based upon the same facts supporting a pled breach of contract claim."  Dkt. No. 33-1 at 12.  Plaintiff contends the claims are not duplicative.  *See* Dkt. No. 38-11 at 23.  Plaintiff argues that its allegations of "[d]ilatory and unreasonable conduct" and "bad faith in connection with Chubb's conduct under both the Policies and Going Forward Defense Agreement" are distinct from its breach of contract claims.  *Id.* at 23-24.

"The implied covenant of good faith and fair dealing is a pledge that neither party to the contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct."  *Gutierrez v. Gov't Emps. Ins. Co.*, 136 A.D.3d 975, 976 (2d Dep't 2016) (citations omitted).  "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d

Cir. 2002).  "A good faith claim, however, is not duplicative of a breach of contract claim where the complaint alleges conduct that is separate from the conduct constituting the alleged breach of contract and such conduct deprived the other party of the benefit of its bargain." *AEA Middle Mkt. Debt Funding LLC v. Marblegate Asset Mgmt., LLC*, 214 A.D.3d 111, 133 (1st Dep't 2023) (citation omitted).

"[A]n 'implied-covenant [contractual] claim can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract.'" *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 93 (S.D.N.Y. 2018) (quoting *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839, 2015 WL 1809001, *4 (S.D.N.Y. Apr. 20, 2015)).  "That is, '[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'" *Id.* (quotation omitted); *see also Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)) ("'[P]arties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract'").

Plaintiff is correct that its complaint raises different allegations for its breach of implied covenant claim and its breach of contract claim.  *See* Dkt. No. 38-11 at 23-24; *see generally* Dkt. No. 1.  For example, Plaintiff alleges, *inter alia*, that Defendant is "refusing to negotiate . . . in good faith" and "forcing its insured . . . to incur additional costs of pursuing this action." Dkt. No. 1 at ¶ 97.  These specific allegations are not listed under Plaintiff's breach of contract claim.  *See*

*id.* at ¶¶ 81-85.  Nevertheless, the allegations of a breach of implied covenant stem from the same

facts as the breach of contract claim: Defendant's alleged refusal to pay any more than $300 per

hour for DLA Piper's partners.  Thus, the claims are duplicative.  *Compare 1555 Jefferson Rd.*

*LLC v. Travelers Prop. Cas. Co. of Am.*, No. 23-CV-6347, 2023 WL 6927205, *3 (W.D.N.Y. Oct.

19, 2023) (quotation omitted) ("[The plaintiff's] good faith and fair dealing claim cannot survive

because the factual basis and relief sought for this claim are the same as for the breach of contract

claim. . . .  With respect to the factual basis, [the Plaintiff] alleges that [the defendants] 'breached

its contractual duties and obligations under the [insurance policies] by failing to defend and

indemnify' . . . .  [The plaintiff] then alleges that [the defendant] breached the implied covenant of

good faith and fair dealing by 'failing to provide a defense and indemnification . . . without

excuse.'  In other words, [the plaintiff] alleges that [the defendant] breached both the contract and

the implied covenant of good faith and fair dealing the same way: by failing to defend and

indemnify [the plaintiff] in the Underlying Action. . . .  To the extent that [the plaintiff] argues

that [the defendant's] failures to respond to its multiple tenders provides a distinct factual basis,

the Court disagrees.  [The plaintiff's] 'complaints of delay and lack of investigation address the

same ultimate grievance of failure to comply with the [policies]'"); *WCA Holdings III, LLC v.*

*Panasonic Avionics Corp.*, No. 1:20-CV-07472, 2023 WL 8434776, *18 (S.D.N.Y. Dec. 5, 2023)

(citing *Rojas v. Don King Prods., Inc.*, No. 11-CV-8468, 2012 WL 760336, *4 (S.D.N.Y. Mar. 6,

2012)), *with 25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co.*, 144 A.D.3d 665, 667 (2d

Dep't 2016) (concluding that the implied covenant claim was not duplicative of the breach of

contract claim because in relation to the implied covenant claim, "the plaintiff alleged that the

defendant refused to provide coverage after initially verbally representing that the loss would be

covered in full," "engaged the services of 'unlicensed professionals' to adjust the claim and then

refused to reconsider its disclaimer" which were not the basis for the breach of the insurance policy claim).

Here, there are no facts alleged that are unrelated to Defendant's purported refusal to pay reasonable attorneys' fees—which plaintiff alleges is required by the terms of the Agreement that Defendant breached.  Plaintiff also seeks the same type of damages in her two claims.  *See* Dkt. No. 1 at ¶¶ 85, 100-01.  Therefore, Plaintiff's breach of the implied covenant of good faith and fair dealing must be dismissed and this aspect of Defendant's motion to dismiss is granted.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 33) is **DENIED in part and GRANTED in part**; and the Court further

**ORDERS** that Plaintiff's motion for partial summary judgment (Dkt. No. 38) is **DENIED without prejudice and with leave to renew**; and the Court further

**ORDERS** that the case is referred to Magistrate Judge Lovric to conduct a Rule 16 conference; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 13, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge